UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **CHARLES EDWARD LINCOLN, III** | **16-12650** |
| DEBTOR | SECTION A |
| | CHAPTER 7 |

## REASONS FOR DECISION

The "Motion for Relief from *Sua Sponte* Order of Conversion to Chapter 7, Entered December 20-22, 2016, Pursuant to Bankruptcy Rule 9024 and Rule 60(a) - 60(b) of the Federal Rules of Civil Procedure"[1] ("Motion for Relief") filed by the debtor, Charles Edward Lincoln, III ("Lincoln"), and the Objection by the U.S. Trustee[2] ("UST") came before the Court on April 5, 2018. At the conclusion of the hearing, the Court took the matter under advisement.

**I. Findings of Fact**

On October 26, 2016, Lincoln filed *pro se* a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. The deadline for Lincoln to file Schedules, Statement of Financial Affairs, as well as other initial documents was November 9, 2016.[3]

On November 8, 2016, Lincoln filed a Motion to Extend Time to file Schedules and Other Opening Case Documents and a Motion to Continue the Section 341 Meeting of Creditors.[4]

---

[1] P-131.

[2] P-156.

[3] P-1.

[4] P-18. The Meeting of Creditors pursuant to 11 U.S.C. § 341 was scheduled to be held on November 29, 2016. P-15.

Lincoln also filed an Application ("Application") to Pay Filing Fee in Installments, which the Court scheduled for hearing on November 14, 2016.[5] At the hearing, Lincoln advised the Court that he was in the process of retaining counsel. The Court continued the hearing on the Application to November 28, 2016.[6]

On November 21, 2016, the U.S. Trustee ("UST") filed a Motion to Dismiss the Case ("UST's Motion").[7] The UST sought dismissal or, alternatively, conversion based on Lincoln's

*Substantial or continuing loss or diminution of the estate and the absence of reasonable likelihood of rehabilitation; ...*

*Failure to maintain appropriate insurance. ...*

*Unexcused failure to satisfy timely filing or reporting requirements. ...*

*Failure to timely provide information reasonably requested by the [UST].*[8]

The UST's Motion was noticed for hearing on December 20, 2016, at 2:00 p.m.,[9] and the UST filed a Certificate of Service showing that the UST's Motion and Notice of Hearing were served on Lincoln on November 21, 2016.[10]

---

[5] P-4, 8.

[6] P-20.

[7] P-22.

[8] *Id.* at pp. 4-5 (emphasis in original).

[9] P-23.

[10] P-24. At the time the UST's Motion was filed, Lincoln was *pro se*. After the UST's Motion was filed and served, Lincoln then filed an Application to Employ Robert Marrero as Counsel. An Interim Order authorizing employment of Robert Marrero as counsel was entered on December 26, 2016. P-35. The final hearing on his employment was scheduled for the same day and time as the UST's Motion, December 20, 2016, at 2:00 p.m. Lincoln did not request a continuance.

At the November 28, 2016, hearing on the Application, the UST expressed concerns regarding lack of insurance for property purportedly owned by Lincoln in New Jersey and Mexico; his failure to complete the initial debtor interview; and his failure to file Schedules, Statement of Financial Affairs, Certificate of Credit Counseling, and a budget. Lincoln advised the Court that he filed an Application to Employ Robert Marrero ("Marrero") to rectify his failings.[11]

The Court granted an extension to December 12, 2016, to file the required documents and found the Application moot.[12] The Court granted Lincoln's Application to Employ Marrero on December 6, 2016.[13]

Lincoln filed a Certificate of Credit Counseling on November 30, 2016. On December 12, 2016, Lincoln filed his Schedules, Statement of Financial Affairs, Disclosure of Compensation of Attorney for Debtor, and Verification of Creditor Matrix.

Lincoln scheduled ownership in properties located in New Jersey and Mexico.[14] The New Jersey property was rented and allegedly had substantial equity although the tenant was not paying rent. The Mexico property was owned free and clear of any encumbrances. In his Schedules, Lincoln also made various representations regarding the properties' availability to satisfy claims but to date had failed to produce documentation sufficient to satisfy the UST"s investigation into the truth of his representations. Lincoln also claimed to hold causes of action against third parties which he intended to pursue.

---

[11] The Application was filed on November 22, 2016. P-25.

[12] P-28, 29.

[13] P-35.

[14] P-39.

The UST's Motion came before the Court on December 20, 2016. Both Lincoln and Marrero attended the hearing. At the start of the hearing, the UST requested a conference in chambers, which was granted and attended by both counsel for Lincoln and the UST.

At the conference, the UST expressed concern should Lincoln elect to testify, alleging a belief that Lincoln had hidden assets and that his conduct had been less than forthright, perhaps criminal. The UST was concerned that Lincoln might commit perjury or incriminate himself should the hearing go forward.

Lincoln's counsel asked to speak with his client privately before the hearing resumed. That request was granted. Following a private discussion with counsel, Lincoln requested to be heard on the record. The Court accommodated his request.

Lincoln was allowed to speak without limitation. He expressed particular concern about pursuing certain causes of action he allegedly held against third parties, including but not limited to those pertaining to the New Jersey real estate.[15] Lincoln also represented that he was being supported through gifts or loans from a third party but offered nothing to quantify the amount or the limits of this arrangement.[16]

Ultimately, conversion of the case to Chapter 7 was ordered because the Court found it to be in the best interest of creditors. The Court provided oral reasons on the record, including that Lincoln had no income or source of funds to support a plan of reorganization; had no income to

---

[15] P-155, Tr. T. 12/20/16, p. 4-7. These claims were against alleged tenants or squatters for rent and the mortgage company for undefined abuse.

[16] *Id.* at p. 5. Chapter 11 debtors may not incur debt without court approval. 11 U.S.C. §§ 364, 503(b)(1), and 549. No approval had been requested for Lincoln's alleged "borrowings."

4

preserve assets or pursue claims held by the estate; and was incurring obligations during the case's administration that could not be satisfied. Further, since Lincoln had represented that the causes of action and properties had value available to pay secured and unsecured creditors, a liquidation of Lincoln's assets was in creditors' interests.

The Court further reasoned that by installing a Chapter 7 trustee, Lincoln's assets would be examined and the trustee could determine how best to proceed.[17] If the trustee determined that administration of Lincoln's properties would be "burdensome" or "of inconsequential value and benefit to the estate," the properties could be abandoned leaving Lincoln to administer them on his own.[18] The trustee was also capable of pursuing any causes of action held by Lincoln while also investigating the existence of any other assets. After ruling, the Court advised Lincoln of the UST's concern that Lincoln had undisclosed assets and admonished him to be forthright with his counsel and the UST.[19]

The Order converting the case to Chapter 7 was entered on December 22, 2016 ("Conversion Order").[20] Barbara Rivera-Fulton was appointed Chapter 7 Trustee ("Trustee").

On March 28, 2017, the UST filed a Motion to Extend Time to File a Motion to Dismiss under 11 U.S.C. § 707(b)(3) and Complaint Objecting to Discharge under 11 U.S.C. § 727, citing

---

[17] *Id.* at p-5-6.

[18] *Id. See also* 11 U.S.C. 554(a).

[19] P-155; Tr. T. 12/20/16, p. 7.

[20] P-47.

the need to complete his investigation.[21] The Court granted this Motion and extended the deadline to object to discharge for sixty (60) days.[22]

On June 23, 2017, the UST, initiated an adversary proceeding by filing a Complaint for Denial of Discharge under 11 U.S.C. § 727.[23]

On December 20, 2017, Lincoln filed the instant Motion for Relief.[24] Lincoln asserts that the Court improperly converted his case to Chapter 7 *sua sponte*, without notice or hearing, and within 120 days of filing. He argues that this constituted mistake, inadvertence, and excusable neglect under F.R.C.P. 60(a) and (b)(1). He also argues that the Conversion Order is void under F.R.C.P. 60(b)(4) due to denial of due process.

## II. Law and Analysis

Lincoln requests that this Court grant relief from the Conversion Order under F.R.C.P. 60, which is made applicable to this proceeding by F.R.B.P. 9024. The burden of proof is on the movant under F.R.C.P. 60.[25]

---

[21] P-90.

[22] P-94.

[23] Adv. 17-1043.

[24] P-131. Lincoln initially failed to set his Motion for Relief for hearing, and the Clerk's Office issued a Notice of Deficiency. P-132. On January 12, 2018, Lincoln filed a Motion requesting that his Motion for Relief be scheduled for special setting. P-140. The Court scheduled a special setting on April 5, 2018.

[25] *U.S. v. Harrison County, Miss.*, 463 F.2d 1328, 1330 (5th Cir. 1972).

### A. F.R.C.P. 60

Lincoln asserts that the Court improperly converted his case to Chapter 7 *sua sponte*, without notice or hearing, and within 120 days of filing. He argues that this constituted mistake, inadvertence, and excusable neglect under F.R.C.P. 60(a) and (b). He also argues that the Conversion Order is void under F.R.C.P. 60(b)(4) due to denial of due process.

#### 1. Clerical Mistake or Omission under F.R.C.P. 60(a)

The grounds for relief from an order under F.R.C.P. 60(a) include "clerical mistake," "oversight," and "omission."

> "To be correctable under Rule 60(a), the 'mistake must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature.'" Clerical mistakes, inaccuracies of transcription, inadvertent omissions, and error in mathematical calculation are within Rule 60(a)'s scope; missteps involving substantive legal reasoning are not.[26]

The Court finds that the Conversion Order was well-reasoned and does not include a "clerical mistake," "oversight," or "omission."

#### 2. Mistake and Inadvertence under F.R.C.P. 60(b)(1)

##### a. Mistake

Lincoln asserts that the Court made a "mistake" in ordering conversion. "Mistake" as used in F.R.C.P. 60(b)(1) means a judicial error involving "a fundamental misconception of law."[27] It

---

[26] *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011) (citations omitted).

[27] *Chick Kam Choo v. Exxon Corp.*, 699 F.2d 693, 695 (5th Cir. 1983) (quoting 11 Wright and Miller, Federal Practice and Procedure, § 2858 at p. 178).

involves "a plain misconstruction of the statute on which the action was grounded."[28] Here the Court found "cause" to convert under 11 U.S.C. 1112(b), and there was no mistake of law.

Section 1112(b)(1) provides:

[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

"The purpose of § 1112(b)(1) is to 'preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation."[29] Section 1112 does not provide a definition of "cause." However, section 1112(b)(4) provides a non-exhaustive list of instances that constitute "cause."[30]

In *Loop Corp. v. U.S. Trustee*, the Court found cause to convert from Chapter 11 to 7:

The Trustee proved the existence of cause by referring to the record, which contained undisputed evidence that the debtors had negative cash flow and no intention of rehabilitating their business. ... [T]he record showed that the debtors' desired Chapter 11 plan would result in the expenditure of even more cash in the pursuit of various causes of action. Because such causes of action could be pursued by a trustee in Chapter 7, no advantage would be gained by remaining in Chapter 11; instead, time and resources would be wasted during a confirmation process that may never be successful.[31]

---

[28] *Alvestad v. Monsanto Co.*, 671 F.2d 908, 912 (5th Cir. 1982) (quoting *Compton v. Alton Steamship Co.*, 608 F.2d 96, 104 (4th Cir. 1979)).

[29] *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004).

[30] Legislative history specifically provides, "This list is not exhaustive." S. Rep. No. 989, 95th Cong., 2d Sess. 117-118 (1978). *See also Tuli v. U.S. Trustee*, 124 Fed.Appx 830, 831, 2005 WL 406630 (5th Cir. 2005).

[31] *Loop Corp.*, 379 F.3d at 518 (citation omitted).

"Cause" for conversion or dismissal also includes "unexcused failure to satisfy timely any filing or reporting requirement"[32] and "failure to timely provide information ... reasonably requested by the [UST]."[33]

In *In re Creech*, the Court found that "[a]n inability to pay ongoing expenses, combined with an absence of reliable income, can establish cause."[34]

In the *Matter of McDonald*,[35] the Court found "cause" when debtor's expenditures were in excess of income such that there was continuous loss to estate.

As a result of the pleadings, arguments of counsel, and Lincoln's own statements, the Court found on the record that Lincoln was incurring expenses daily but had no income to satisfy them. Specifically, Lincoln admitted to utilizing loans from a third party to pay for his living expenses.[36] He had not been authorized by the Court to incur debt, nor did he explain how he intended to repay these "loans."

Lincoln also claimed substantial equity in properties located in New Jersey and Mexico but lacked the funds necessary to develop or maintain them while proposing repayment of his debts. Lincoln proposed to borrow funds to develop the Mexico property, but he failed to offer even the prospect of funding for development. The New Jersey property was already mired in litigation, another bankruptcy, and foreclosure. Lincoln, in this Court's view, lacked the ability to untangle

---

[32] 11 U.S.C. § 1112(b)(4)(F).

[33] 11 U.S.C. § 1112(b)(4)(H).

[34] *In re Creech*, 538 B.R. 245, 249 (Bankr.E.D.N.C. 2015) (citation omitted).

[35] *Matter of McDonald*, 1994 WL 160484 (ED.La. 1994).

[36] P-155, Tr. T. 12/20/16, p. 5, ll. 10-16.

this web, and he offered no evidence to suggest otherwise. For these reasons, he failed to provide proof that a feasible plan could be presented and funded.

In addition, the UST's expressed concern that Lincoln had failed to disclose all assets led the Court to consider a trustee to investigate the possibility of undisclosed assets.[37] Several creditors had also filed substantial claims against Lincoln which Lincoln disputed, and Lincoln claimed causes of action against others. Again, Lincoln lacked funding to prosecute or defend any of these actions. Conversion also offered an efficient and economical process for litigating the claims, and a trustee is uniquely qualified to access and pursue any defense available to the estate.[38]

Although the UST preferred dismissal, he acknowledges that under section 1112, the Court may convert if it believes conversion is in the best interest of creditors. In this case, the above described facts weighed in favor of conversion.

The present Motion for Relief filed by Lincoln urges the Court to re-convert this case to one under Chapter 11 so that Lincoln can generate income through the development of the Mexico property. Lincoln has failed to provide any evidence regarding his ability to undertake, much less complete, a development venture.

The months intervening since this case's conversion have not changed Lincoln's circumstances. He is not gainfully employed, despite holding multiple professional degrees. He lacks any defined or legally enforceable stream of funds with which to repay his creditors.

---

[37] Section 704(a)(4) provides that a trustee shall "investigate the financial affairs of the debtor."

[38] Section 323 provides that a trustee "is the representative of the estate" and "has capacity to sue and be sued."

Bankruptcy stays the foreclosure against property with equity in order that the property's value can be maximized for all. Since conversion, the Trustee has determined that Lincoln's New Jersey property does not have equity and has not found any basis to challenge the mortgage against it. As a result, it has been abandoned back to Lincoln,[39] and he is free to pursue whatever claims against the lenders he deems worthy. The Trustee has pursued the claim against Lincoln's alleged tenant and has obtained a favorable, court approved settlement given the facts of the case.

As of this ruling, the Trustee is still investigating the Mexican property in an effort to determine if it is worthy of administering or liquidating. Lincoln has failed to offer proof of financing, income, or investment, or even the hint of persons willing to consider financing or investing in such a venture. Lincoln has had a year since conversion to plan and to find potential sources to fund a development project. None was presented. Lincoln's desire to present a Chapter 11 plan which redevelops this property is at best a pipe dream with no real possibility of success.

For the reasons above, the Court finds it made no mistake of law in ordering conversion for cause under section 1112(b).

### b. Inadvertence

Lincoln also contends that the Conversion Order was inadvertent. The Court deliberately intended the Conversion Order as entered. Therefore, the Court finds that the Conversion Order was not entered inadvertently.

---

[39] P-110,111.

11

### 3. Excusable Neglect under F.R.C.P. 60(b)(1)

Typically, attorneys seek relief based on excusable neglect when they have missed a deadline. The Supreme Court has ruled:

> Thus, at least for purposes of Rule 60(b), "excusable neglect" is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.[40]

Lincoln does not contend that the Conversion Order was entered due to his excusable neglect in missing a deadline. Rather, he contends that his "delay in filing this motion until now constituted excusable neglect" caused by his "surprise" from the Court's mistake and inadvertence in issuing the Conversion Order.

Relief based on Rule 60(b)(1) must be brought within a "reasonable time" and "no more than a year from the entry of the ... order."[41] The Conversion Order was entered on December 22, 2016, and Lincoln's Motion for Relief was filed on December 20, 2017. The Court finds that Lincoln's Motion is timely. Therefore, it is not necessary for the Court to address the propriety of Lincoln's "excusable neglect" argument.

### 4. Void under F.R.C.P. 60(b)(4)

Lincoln contends that the Conversion Order is void because he was denied due process. He complains that notice and hearing are required by section 1112 and that notice was not afforded him. The UST filed a Motion to Dismiss Lincoln's bankruptcy case under section 1112(b) detailing

---

[40] *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993).

[41] F.R.C.P. 60(c)(1).

"cause" for converting or, alternatively, dismissing Lincoln's case.[42] The Court did not convert *sua sponte*,[43] although the UST requested dismissal as its preferred remedy.[44]

The UST's Motion was noticed for hearing on December 20, 2016, at 2:00 p.m.,[45] and the UST filed a Certificate of Service showing that the UST's Motion and Notice of Hearing were served on Lincoln on November 21, 2016.[46]

Both Lincoln and his counsel appeared at the hearing on the UST's Motion. After a conference in chambers with counsel for the UST and counsel for Lincoln,[47] and after allowing Lincoln to be heard on the record, the Court denied dismissal but converted the case to one under Chapter 7 because it found conversion to be in the best interest of creditors.

Due process was satisfied as the UST's Motion was properly noticed and a hearing was held. The Court even allowed Lincoln to address the Court directly.

---

[42] Case 16-12650, P-22, p. 4-5.

[43] Even had this Court converted *sua sponte*, a Bankruptcy Court has the right to convert or dismiss *sua sponte*. *In re Bayou Self, Inc.*, 73 B.R. 682 (Bankr.W.D.La. 1987). Also, Lincoln acknowledged the Court's right to convert on its Motion. P-131, ¶ 17.

[44] *Id.* at p. 5.

[45] P-23.

[46] P-24.

[47] Lincoln contends in his Motion that the Court held a "secret meeting" in chambers. The conference in chambers prior to the Court's ruling was attended by Lincoln's counsel.

### B. 11 U.S.C. § 1112

#### 1. No Requirement of "Bad Faith"

Lincoln contends that a court must find "bad faith" in order to convert. Lincoln cites *In re Little Creek Development Co.*[48] in support of his position. The list of items that include "cause" in section 1112(b)(4) is not exhaustive.[49] The Fifth Circuit found in *In re Little Creek Development Co.* that "cause" was not specifically defined in order "to afford flexibility to the bankruptcy courts."[50] The Fifth Circuit went on to find, "Numerous cases have found a lack of good faith to constitute "cause" for lifting the stay to permit foreclosure or for dismissing the case." While "cause" to convert may include "bad faith," it is not a requirement.

#### 2. Conversion within 120 Days of Filing

Lincoln contends that a court may not convert a Chapter 11 case during the first 120 days when debtor has the exclusive right to file a plan.[51] At the conversion hearing, it was proven that Lincoln was living on money provided by a third party; his assets were in dispute; he had no income; and a reasonable likelihood of confirming a feasible plan was absent. Nothing in section 1112(b) prohibits dismissal or conversion of a case prior to the expiration of 120 days when grounds for conversion or dismissal are present. On the contrary, grounds for conversion or dismissal specifically include "the absence of a reasonable likelihood of rehabilitation,"[52] and Legislative

---

[48] *In re Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

[49] Legislative history specifically provides, "This list is not exhaustive." S. Rep. No. 989, 95th Cong., 2d Sess. 117-118 (1978).

[50] *In re Little Creek Development Co.*, 779 F.2d at 1072.

[51] *See* 11 U.S.C. § 1121(b).

[52] 11 U.S.C. § 1112(b)(4)(A).

History provides that "cause" for conversion or dismissal includes "the inability to effectuate a plan."[53]

In *McDonald*, the Court rejected the argument that conversion or dismissal was not appropriate within 120 days of the petition date.

> Section 1121 provides a debtor with a period within which the debtor has the exclusive right to file a reorganization plan. During this exclusive period no other party can file a competing plan. However, the language of § 1121 provides no other limitation on any interested party. In addition, the language of § 1121(b) places no limit on any interested party's ability to file a motion to dismiss. The Bankruptcy Code therefore imposes no express condition upon the ability of the bankruptcy court to entertain a motion to dismiss or convert a case. The Court refuses to imply a 120 [day] waiting period into § 1121(b).[54]

### C. 11 U.S.C. § 706(a)

Lincoln asserts that he has the right under 11 U.S.C. § 706(a) to convert back to Chapter 11. Section 706(a) provides:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title....

Lincoln has not filed a Motion under Section 706 to Convert back to Chapter 11. Nevertheless, Lincoln's case was converted from Chapter 11 to Chapter 7 under section 1112. As a result, he does not have the right to convert to Chapter 11 at any time.

---

[53] H.R. Rep. 95-595, 95th Cong., 1st Sess. 405-406 (1977).

[54] *McDonald*, 1994 WL 160484, *2-3.

### III. Conclusion

For the reasons assigned above, the Motion for Relief filed by Lincoln is denied. The Conversion Order contains no "clerical mistake," "oversight," or "omission" under F.R.C.P. 60(a). Lincoln has not shown mistake of law, inadvertence, or excusable neglect under F.R.C.P. 60(b)(1). The Conversion Order is not void under F.R.C.P. 60(b)(4), nor does Lincoln have a right to convert under 11 U.S.C. § 706(a). The Court will enter a separate Order in accord with these Reasons.

New Orleans, Louisiana, May 18, 2018.

                Hon. Elizabeth W. Magner
                U.S. Bankruptcy Judge